Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 6199 | DATE | 7/16/2001 |
| CASE TITLE | Lynn M. Hull vs. Board of Trustees of the University of Illinois at Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing is set for **8/2/01** at **9:30 a.m.**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [33] is denied. A status hearing is set for August 2, 2001 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | JUL 18 2001 date docketed | 53 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | FILED FOR DOCKETING 01 JUL 17 PM 3: 48 | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| RJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LYNN M. HULL, )
)
Plaintiff, ) No. 98 C 6199
v. )
)
BOARD OF TRUSTEES OF THE UNIVERSITY ) Judge Joan B. Gottschall
OF ILLINOIS AT CHICAGO )
Defendant. )

DOCKETED

JUL 1 8 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Lynn Hull filed suit against her employer, the Board of Trustees of the University of Illinois at Chicago (UIC), under Title VII. Hull alleges that she was discriminated against on the basis of her gender because she was subjected to a hostile work environment, and that she was retaliated against for complaining about sexual harassment. UIC has moved for summary judgment. For the reasons that follow, UIC's motion is denied.

### Background

The facts that follow are taken in the light most favorable to Hull, the non-moving party. At all times relevant to this motion, Hull was a machinist in the physical plant department for UIC. Hull was the only female machinist in her trade group. She was given a copy of a UIC Sexual Harassment Policy, but the policy she was given was not the same as the UIC Sexual Harassment Policy currently in effect. UIC has provided the court with a copy of the current policy, but there is no evidence that Hull ever received a copy of that new policy. Nor has UIC provided the court with a copy of the old policy, which Hull admits she received.

Hull contends that she was subjected to a hostile work environment based on her gender.

53

In support of her contention, she provides a list of several incidents of alleged sexual harassment in her workplace. First, Hull complains that she was subjected to inappropriate pictures, pin-ups, and calendars of scantily-clad women in various places throughout the workplace. Second, she alleges that she was physically assaulted on two occasions by two different male coworkers. Third, she alleges that she was denied the opportunity to work overtime several times, and that her supervisor, Ron Netzer, gave false reasons for these denials. Fourth, she contends that she was subjected to frequent pornographic jokes and off-color comments at work. Fifth, she claims that she was asked to take off her shirt in front of Netzer's supervisor, a male employee named James Henderson, in order to try on a uniform shirt. She contends that she was forced to wear improper (men's) clothing for about 2 or 3 years, which was dangerous for her, before UIC finally provided her with women's sized clothing. Sixth, Hull alleges that once her male coworkers found out that she was complaining about the pornographic materials, they acted hostile toward Hull, stopped talking to her, intentionally talked dirty in front of her, or became "snarly" with her. (Hull Dep. at 95). Seventh, Hull complains that she was improperly denied funeral leave by Henderson, even though Henderson was not the person who approved or disapproved funeral leave for the male workers. Eighth, Hull complains that she was never supplied with a first aid kit or eye wash in her work area. Finally, Hull claims that she was subjected to a number of improper and unfair time-keeping practices. She alleges that on several occasions she was charged with vacation time or sick time improperly. She also complains that she was forced to prove that she called in sick (with her telephone statement) in order to avoid being docked pay for an entire day, although she knows of no male employee who has been forced to provide such proof. Further, she claims that her supervisor forced her to take vacation

2

in full 8 hour increments, rather than allowing her to take time off in smaller increments, like her male coworkers.[1] Most of the evidence supporting plaintiff's claims comes exclusively from her affidavit and her deposition testimony.

## Analysis

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In support of its motion for summary judgment, UIC argues: 1) that the conditions that Hull was subjected to were not sufficiently severe or pervasive to rise to the level of an objectively hostile work environment; 2) that Hull did not subjectively consider her working

---

[1] Hull acknowledges that Bill Mison, one of her coworkers, was told to take vacation time in 8 hour increments, but she contends that he was not so instructed until several months before his deposition. Up to that point, Hull alleges, Mison was able to take vacation in smaller increments.

3

conditions so severe as to rise to the level of a hostile work environment; 3) that UIC should not be held liable for the harassment of Hull's coworkers because there is no evidence that UIC was negligent; 4) that the alleged harassment suffered by Hull was not sufficiently severe or pervasive to amount to a change in her employment conditions; and 5) that none of the conduct complained of by Hull was related to her gender. The first, second, and fourth arguments listed above are all related, and will be treated together in the following section of this opinion.

### *Severity of the Conditions*

A plaintiff asserting a hostile work environment claim must establish that her work environment was "both subjectively and objectively offensive; 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). A hostile work environment claim requires proof of harassment so severe or pervasive as to alter the plaintiff's working environment. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806 (7th Cir. 2000) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)). In order to determine whether a work environment rises to this level, the court should look at all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 806-07 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Distinguishing between a work environment that is objectively hostile and one that is not is often a difficult task. Title VII is not a "general civility code for the American workplace." *Id.* at 807 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). As the

Seventh Circuit has repeatedly observed:

> Drawing the line is not always easy. On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. . . . On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Hostetler*, 218 F.3d at 807 (citations omitted). Clearly, unwanted physical contact falls on the prohibited side of the line. Hull claims she was physically assaulted twice by two different coworkers. First, she claims that she was struck on the buttocks with a board at the UIC Hospital by Dick Gerhardt, a carpenter who was not in a supervisory role over Hull. Shortly after the incident, Hull reported to Human Resources that she was struck, and that Gerhardt said to her, "you better watch yourself." (Hull Dep. at 109-10). Plaintiff also testified that Gerhardt laughed after he struck her. (Hull Dep. at 106). Second, plaintiff testified that she was punched in the arm by Frank Moccio, a plumber who was not in a supervisory role over Hull. The punch apparently left a sizable bruise on Hull's arm.

Attempting to mitigate the importance of these events, UIC notes several additional facts: first, Hull eventually withdrew her harassment complaint as to the first incident; second, as to the second incident, an investigation conducted by the UIC police was unable to find sufficient evidence to validate a criminal complaint; third, the state refused to prosecute Moccio in connection with the second incident because it was unable to prove a criminal case.[2] Hull's

---

[2] UIC also argues that there is no evidence to suggest that either of the assaults were in any way connected to Hull's gender. This argument does not go to the objective or subjective severity of the conditions themselves, and will be addressed below, in the section entitled *Relation to Gender*.

5

withdrawal of her complaint against Gerhardt might suggest that she did not subjectively find the first incident so severe as to constitute a hostile work environment. Nevertheless, Hull did pursue her complaint concerning Moccio and the second incident. The fact that neither the UIC police nor the Chicago Police Department found sufficient evidence to criminally prosecute Moccio does not make Hull's complaint about this incident "unsubstantiated" for purposes of this motion for summary judgment. There is competent evidence in the record - namely, Hull's own testimony - to indicate that she was indeed punched by Moccio. In resolving a motion for summary judgment, the court is to examine the record in the light most favorable to the non-moving party. Summary judgment is not a proper forum for resolving swearing contests. That job is left to the jury.

Although one or two isolated acts of physical harassment might not always rise to the level of a hostile work environment, *see Hostetler*, 218 F.3d at 808, in this case the physical incidents do not stand alone. Here, the physical incidents were not clearly related to gender, were not intimate (as compared to a kiss or a hand on the thigh), were few in number, and were relatively minor. Nonetheless, when viewing all of the circumstances, including other harassment that Hull testified to, such as the presence of sexually suggestive posters, calendars, magazines, and pin-ups, the use of off-color language and inappropriate jokes, and the differences in treatment that Hull complains of, a reasonable jury could conclude that the physical assaults may have been part of a workplace that, on the whole, would make a reasonable woman feel so uncomfortable or so threatened as to constitute a hostile work environment.

Even if a jury could find that the workplace constituted an objectively hostile work environment, a plaintiff must also subjectively believe that she has been subjected to conditions

so severe or pervasive as to be hostile or abusive. UIC argues that Hull's actions show that she never felt that she was subjected to such hostile or abusive conditions. UIC points to Hull's failure to complain about certain incidents, her delay in complaining about some harassment, her withdrawal of some harassment complaints, her request that Human Resources not address the issue of the posters, calendars, and pin-ups, because she would prefer to handle it on her own, and her own occasional use of off-color language in the workplace. UIC contends that these actions "are not consistent with an individual that truly believes that [the] severity of these incidents rise[s] to [the] level necessary to establish a sexually hostile work environment." (Def.'s Brief at 13). Viewing the record as a whole, and in the light most favorable to Hull, the court disagrees with this conclusion. Although some of Hull's actions may indicate that she did not feel truly harassed by any particular incident, there is ample evidence in the record to indicate that Hull felt subjected to a hostile work environment at UIC. Hull complained of harassment to Human Resources, the Affirmative Action department, and her supervisor, Netzer, on several occasions. Hull sent letters to Sandy Thoner, a Human Resources representative, outlining multiple incidents of harassment. Indeed, UIC even goes so far as to characterize Hull as "a prolific complainer." (Def.'s Brief at 6). Thus, the court cannot conclude, at this stage, that Hull did not truly feel that she was subjected to a hostile or abusive working environment.

*UIC's Negligence and the* Ellerth *Affirmative Defense*

UIC argues that it can be held liable for an employee's harassment outside the scope of employment only where the employer's own negligence was a cause of the harassment. That is, UIC argues that it is not liable unless it "knew or should have known about the conduct and failed to stop it." (Def's Brief at 13) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742,

7

759 (1998). UIC has accurately stated the negligence standard, which is applicable to hostile work environment claims in which the hostile environment is created by coworkers that are not in supervisory positions. UIC, however, ignores the holding of *Ellerth*, which is that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765. In this case, the evidence, when viewed in the light most favorable to plaintiff, reveals harassment by supervisors as well as coworkers. For instance, Hull testified that one of the offensive pictures belonged to Netzer, her immediate supervisor. Hull also testified that Henderson, Netzer's supervisor, told her to take her shirt off in front of him. Finally, Hull testified that Henderson and Netzer made improper decisions with respect to her, such as denying her request for funeral leave, charging her vacation or sick time when it was not appropriate, requiring her to come forward with proof that she had called in sick, denying her opportunities to work overtime, and forcing her to take time off in 8 hour increments. She also testified, at least with respect to some of these practices, that her male coworkers were not subjected to the same practices. Thus, at least some of the hostility and abusiveness that Hull allegedly encountered was caused by supervisors.

The *Ellerth* Court, however, went on to provide an affirmative defense for employers in cases where the supervisor did not take a tangible employment action. The Court stated:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any

8

> preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Ellerth*, 524 U.S. at 765. Thus, in order to successfully employ the affirmative defense, UIC has the burden of establishing the elements of the defense by a preponderance of the evidence. To this point, UIC has failed to carry that burden. Initially, the court notes that UIC has offered as evidence only the current antiharassment policy, and not the one that was given to Hull – the one that was apparently in effect at the time of the conduct in question.[3] Although proof of an antiharassment policy is not necessarily required, UIC must show that it took reasonable care to prevent or correct any harassment. On this point, there is a factual dispute. Although Hull admits to withdrawing some complaints, she testified that on several occasions she would complain of harassing behavior and get no effective response. For instance, she testified that UIC took an excessive amount of time to get her a woman's-sized uniform, though she had provided UIC with a list of vendors who could provide such uniforms. She also testified that after her complaints of inappropriate pictures and calendars the offending materials were

---

[3] In UIC's response to Hull's statement of additional facts, UIC contends that: "The original policy, which was issued in 1996 and provided to Hull, contains no substantive changes from the current policy." In support of this statement, UIC cites to page 43 of Sandy Thoner's deposition transcript. The excerpts from the Thoner deposition submitted to the court, however, do not include a page 43. Nor is the court able to find anywhere in the excerpts a statement by Thoner indicating that the previous policy is substantively similar to the current policy.

9

removed, but that over the years similar materials have reappeared. (Hull Dep. at 112). Whether or not UIC's responses to Hull's complaints were reasonable is an issue that cannot be decided on summary judgment.

*Relation to Gender*

UIC's last argument is that none of the conduct Hull complains of was related to her gender. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'" *Oncale*, 523 U.S. at 80 (quoting 42 U.S.C. § 2000e-2(a)(1)). Yet, some of the harassment Hull complains of does bear a relationship to her gender. The pictures, pin-ups, calendars, and magazines that made her feel uncomfortable depicted women with little or no clothing on. Her testimony that she was told to remove her shirt in front of her male supervisor also contains an obvious link to her gender. Certainly a man in that situation would not feel as threatened. Moreover, even the facially gender-neutral harassment she complains of, such as the physical assaults and the improper time-keeping practices, is still actionable if she can demonstrate that she was targeted for such behavior because of her sex. *See Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999). In *Smith*, the court found evidence that a male worker was physically and verbally aggressive toward the plaintiff and other female coworkers, but noted that he did not treat male coworkers with such hostility. Thus, the court concluded that a jury could find that the harassment was based on sex. *See id.* Here, there is some evidence from which a reasonable jury could conclude that Hull was targeted for harassing behavior because of her sex. Initially, the court notes that Hull was the only female machinist in her trade group, making comparisons to other workers difficult. However, Hull testified that she was forced to take time off in full 8 hour increments, while at least one of her

10

male coworkers was not so instructed until several months before his deposition in this litigation. Hull also testified that she was required to prove that she called in sick to work one day, while she knows of no male coworker who was forced to do so. Finally, Hull testified that her coworkers became more hostile toward her after it became known that she complained about the pictures and calendars - thus providing an indirect link to her gender. In all, there is sufficient evidence for a jury to find a link between Hull's gender and at least some of the harassing behavior she complains of, perhaps including the physical assaults.

## Conclusion

For the reasons set forth above, UIC's motion for summary judgment is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 16, 2001